UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

PRINCE DIVINE MESSIAH MUHAMMAD,

      Plaintiff,

  -v-                                          No.  15 CV 5603-LTS-JCF

NEW YORK CITY, et al.,

      Defendants.

-------------------------------------------------------x

## REDACTED MEMORANDUM OPINION AND ORDER

Plaintiff Prince Divine Messiah Muhammad, whose legal name is Richard McCary ("Plaintiff"), is an involuntarily committed psychiatric patient who brings this action pro se against the City of New York, Dr. Mary Bassett, Vincent Miccoli, Dr. Catherine Mortiere, and Dr. Olga Sekulich pursuant to 42 U.S.C. section 1983.  Plaintiff's principal claims appear to be based on involuntary medication, excessive force, and inadequate medical treatment, arising under the Fourteenth Amendment to the United States Constitution and asserted pursuant to 42 U.S.C. section 1983.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.  Defendants Miccoli, Dr. Mortiere, and Dr. Sekulich (collectively, the "Individual Defendants") have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Court has thoroughly reviewed all of the parties' submissions and arguments, which have been largely filed under seal for the purposes of protecting Plaintiff's confidential medical information, and the un-redacted version of this Memorandum Opinion and Order is captioned "Sealed Memorandum Opinion and Order" and will be filed under seal for substantially the reasons stated in this Court's prior Order (docket entry no. 32), with this redacted version to be filed on

the public docket.[1]  For the following reasons, the Individual Defendants' motion for summary judgment is granted.

BACKGROUND

The following facts are undisputed unless indicated otherwise.  At the time of the alleged events, Plaintiff, who was involuntarily committed to psychiatric care in 1979, resided at Kirby Forensic Psychiatric Center ("Kirby").  At Kirby, Plaintiff had a treatment team comprised of several professionals: Dr. Anthony Lanotte was his psychiatrist, Dr. Mortiere was his psychologist, Dr. Sekulich was his physician, and Emmanuel Charles was his social worker.  Plaintiff was also treated by various other nurses and aides.  The treatment team met with Plaintiff regularly and documented their interactions, noting what medications were administered and which doctors administered them.  (Sekulich Aff.[2] Ex. A.)  The team also logged Progress Notes (Sekulich Aff. Ex. C) if anything unusual occurred.  (Mortiere Aff. ¶ 7.)  On the morning of May 20, 2015,[3] Plaintiff required emergency medication and Kirby's records indicate that Plaintiff accepted the medication and it was administered without incident or injury.[4]  Plaintiff's account of the incident is quite different.

---

[1]  Defendants are hereby directed to file redacted version of their sealed submissions on the public docket.  The redactions must be limited to content that would otherwise reveal Plaintiff's confidential medical information.

[2]  As previously noted, the Individual Defendants submitted materials under seal, including each of the affidavits cited herein and the transcript of Plaintiff's deposition, the sealed filing of which is authorized to the extent necessary to protect Plaintiff's confidential medical information.  (See docket entry no. 32 (Order authorizing sealed filing); docket entry no. 40 (sealed filing).)

[3]  Plaintiff's Complaint and deposition reference events that allegedly took place on May 21, 2015, but because **[REDACTED]** the Court construes Plaintiff's allegations to refer to the event of May 20, 2015.

[4]  **[REDACTED]**

Plaintiff alleges that he was "jumped an beaten [sic] in front of the whole ward" (internal quotation marks omitted) (docket entry no. 2, Complaint ¶ 1) as a result of Dr. Mortiere saying, "[y]ou need to go in the room and take your pants down." (Pl.'s Dep. at 80.) After this incident, Plaintiff alleges, he experienced a symptom that led him to believe that he was bleeding internally. (Pl.'s Dep. at 99.)[5] Plaintiff alleges he told Dr. Sekulich he was "bleeding from the inside" (Pl.'s Dep. at 98) and she refused to give him medical treatment, allegedly saying "to hell with you." (Pl.'s Dep. at 99.) Plaintiff, however, has not alleged any continuing physical harm despite having been allegedly denied medical treatment, and he states the alleged internal bleeding went away on its own. (Pl.'s Dep. at 98.) Furthermore, Plaintiff has not proffered any further evidence to support his claims in any of the several opposition letters he wrote the Court in response to the Individual Defendants' motion. (See docket entry nos. 43, 45, 49 & 50.)

Miccoli, the Executive Director of Kirby, explained that his supervisory responsibilities are to "oversee the day-to-day operation and management of Kirby's . . . departments and divisions, which are the direct responsibility of their respective heads." (Miccoli Aff. ¶ 6.) Miccoli was not mentioned in Plaintiff's Complaint aside from being named as a defendant, and he asserts that he was in no way involved in treating Plaintiff. (Miccoli Aff. ¶ 7.) Plaintiff, similarly, states that he does not believe Miccoli was in any way involved in the incident at issue. (Pl.'s Dep. at 43.) Dr. Mortiere proffers that she has "never ordered or administered any medication to Mr. Muhammad or any other Kirby patient" (Mortiere Aff. ¶ 6) and denies being involved in any use of force against Plaintiff. (Mortiere Aff. ¶ 8.) Dr. Sekulich states that she does not specifically recall the events of May 20, 2015, when Plaintiff was administered emergency drugs (Sekulich Aff. ¶ 14), and points to the lack of medical

---

[5] **[REDACTED]**

documentation as support for her conclusion that Plaintiff did not ask her for medical attention. (Sekulich Aff. ¶ 17.)

## DISCUSSION

Summary judgment shall be granted when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Initially, the burden is on the moving party to demonstrate that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue of fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is material when it "might affect the outcome of the suit under the governing law." Id. Once the burden of proof is met by the moving party, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. at 257. If the nonmoving party presents enough evidence that a reasonable jury could return a verdict in its favor, summary judgment is not appropriate. Id. at 248.

When deciding a motion for summary judgment, the Court must view the alleged facts in the "light most favorable to the party opposing the motion." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Still, for a dispute to be sufficiently "genuine" to defeat summary judgment, the nonmoving party must do more than rely on his own "conclusory allegations." Harris v. Aidala, 271 F. App'x 34, 36 (2d Cir. 2008); see also Anderson, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Pro se pleadings are construed liberally and held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 596 (1972). The Second

Circuit has held that "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Claims Against Vincent Miccoli

Miccoli can only be held liable in this Section 1983 action, given his supervisory role, if he "directly participated in the alleged constitutional violations" or intentionally violated the plaintiff's constitutional rights. Gronowski v. Spencer, 424 F.3d 285, 293 (2d Cir. 2005). Plaintiff has proffered no evidence that Miccoli was involved in the alleged events. In fact, Plaintiff has stated that Miccoli was not involved in any way. Therefore, because there is no dispute that Miccoli did not participate directly in the alleged violations and that he did not otherwise violate Plaintiff's constitutional rights, all of Plaintiff's claims against Miccoli are dismissed.

The Involuntary Medication Claim

If an involuntarily committed psychiatric patient is acting in a manner in which he is dangerous to himself and those around him, psychiatrists may administer emergency medication against the patient's will without violating his rights. Washington v. Harper, 494 U.S. 210, 211 (1990); see also N.Y. Comp. Codes R. & Regs. tit. 14, § 527.8(c) (2016) ("Facilities may give treatment, except electroconvulsive therapy, to any inpatient, regardless of admission status or objection, where the patient is presently dangerous and the proposed treatment is the most appropriate reasonably available means of reducing that dangerousness.").

Dr. Lanotte, Plaintiff's psychiatrist at Kirby, proffers that, on the morning of May

20, 2015, Plaintiff **[REDACTED]** required the administration of emergency medication. (Lanotte Aff. ¶ 20.) This assertion is corroborated by both Dr. Mortiere's affidavit and a contemporaneous Progress Note written by a nurse at Kirby. Plaintiff does not contest that he created an emergency situation. Therefore, there is no genuine issue of material fact as to whether the medications at issue were delivered under appropriate circumstances, and Plaintiff's claims alleging the unconstitutional involuntary administration of medication are dismissed accordingly.

The Excessive Force Claim Against Dr. Sekulich and the Inadequate Medical Treatment Claim Against Dr. Mortiere

In neither his complaint nor his deposition does Plaintiff assert that Dr. Sekulich used any force on Plaintiff, nor does he assert that Dr. Sekulich ordered others to use such force. Likewise, Plaintiff does not assert that Dr. Mortiere was ever informed that Plaintiff had requested medical attention, and Dr. Mortiere denies being asked by Plaintiff for such help. Accordingly, there is no dispute that Dr. Sekulich was not involved in the alleged use of excessive force, nor any alleged denial of requested medical attention. Defendants Sekulich and Mortiere are therefore entitled as a matter of law to summary judgment dismissing the excessive force and inadequate medical treatment claims, respectively, against them.

The Excessive Force Claim Against Dr. Mortiere

Plaintiff asserts that Dr. Mortiere ordered others to use force against him by telling him, "[y]ou need to go in the room and take your pants down," a statement in which no force is mentioned. Dr. Mortiere denies ever giving such an order at all. In their motion for summary judgment, the Individual Defendants have provided sworn affidavits from both Dr.

Lanotte and Emmanuel Charles, a social worker on Plaintiff's treatment team, corroborating Dr. Mortiere's assertion that she never gave such an order.  **[REDACTED]**

Despite alleging in his complaint that he was beaten in front of the entire ward, Plaintiff has not identified or proffered any witnesses to corroborate his claim.  Plaintiff has also failed to contest the specific factual assertions made in the affidavit filed in support of Individual Defendants' motion.  By merely relying on his own conclusory statements, Plaintiff has not put forth enough evidence to create a genuine issue of material fact.  See Torres v. Carry, 800 F. Supp. 2d 577, 584 (S.D.N.Y. 2011) (granting summary judgment where the plaintiff failed to bring forth witnesses and where defendants' statements were corroborated by several professionals' testimony).  Summary judgment is granted in favor of Dr. Mortiere as to this claim, accordingly.

The Inadequate Medical Treatment Claim Against Dr. Sekulich

There are two standards used to evaluate whether there has been inadequate medical treatment when a Section 1983 claim is raised: the deliberate indifference standard and the substantial departure standard.  The deliberate indifference standard, articulated in Estelle v. Gamble, 429 U.S. 97 (1976), applies to convicted prisoners raising claims under the cruel and unusual punishment clause of the Eighth Amendment.  To state a claim under the Estelle test, the complainant must have had a serious medical condition and that condition must have been met with deliberate indifference.  Id. at 104-05.  The substantial departure standard, as articulated in Youngberg v. Romeo, 457 U.S. 307 (1982), applies to involuntarily committed patients raising Fourteenth Amendment Due Process claims.  Under the Youngberg test, a professional's medical decision is accorded a presumption of validity; to demonstrate inadequate medical treatment, the

plaintiff must show the medical treatment substantially departed from the accepted standards. Id. at 323.

Although it appears that the Youngberg substantial departure standard should apply in this case, the Second Circuit has previously applied the deliberate indifference standard to a Section 1983 inadequate medical treatment claim raised under the Fourteenth Amendment. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (applying the deliberate indifference standard to evaluate a pre-trial detainee's claim under the Fourteenth Amendment). Accordingly, the case law is somewhat unclear as to what standard should apply to the Fourteenth Amendment claim in this case. See Dubose v. Boudreaux, No. 12-CV-7633, 2014 U.S. Dist. LEXIS 123777, at *13-14 (S.D.N.Y. Aug. 20, 2014) (noting this uncertainty and applying both standards in a case where an involuntarily committed psychiatric patient raised a Section 1983 claim regarding his dental treatment). The Court need not resolve the issue here, however, because Plaintiff's claims cannot survive summary judgment under either standard.

Under the deliberate indifference standard, the plaintiff must first establish that he suffered from a serious medical condition. The Second Circuit has explained that such a condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). The Circuit has considered various factors to determine whether a medical condition meets one of the three aforementioned criteria, among which, as pertinent here, is whether the condition led to "'substantial and chronic pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). Here, Plaintiff has not alleged any facts that could support a determination that his alleged internal bleeding caused, or resulted from a condition that causes, substantial and chronic pain. Indeed, he has not presented any evidence

demonstrating that he suffered any significant or lasting effects after the alleged denial of medical treatment. In fact, Plaintiff testified that the alleged bleeding went away on its own. Based on this record, the Court concludes that Plaintiff cannot, as a matter of law, sustain his burden of demonstrating he was denied treatment for a serious medical condition. Summary judgment for Dr. Sekulich is therefore appropriate under the deliberate indifference standard.

Summary judgment is also appropriate under the substantial departure standard. When applying this standard, a medical professional's decision "is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 323. Plaintiff's conclusory statement that he thought he had internal bleeding **[REDACTED]** does not suffice to rebut the presumption of validity afforded to Dr. Sekulich's alleged determination that this condition did not require treatment. See Wyler v. United States, 725 F.2d 156, 160 (2d Cir. 1983) (affirming summary judgment when nonmoving party did not file opposition statements and relied on conclusory statements in opposing the motion). Plaintiff's conclusory statements, unsupported by any other evidence, are not enough to defeat the presumption of validity under the substantial departure standard, especially in light of the medical documentation and consistent testimony by Kirby employees **[REDACTED]**. Therefore, under either standard—the deliberate indifference standard or the substantial departure standard—there are no genuine issues of material fact precluding summary judgment in Dr. Sekulich's favor and all of Plaintiff's claims regarding inadequate medical treatment are dismissed.

Claims Against the City of New York and Dr. Bassett

In his Complaint, Plaintiff named the City of New York and its Commissioner of Mental Health, Dr. Mary Bassett, in her official capacity, as defendants (together, the "City Defendants"). Plaintiff was sent materials to complete summonses to be served by the U.S. Marshals Service for all of the defendants named in the Complaint, but returned completed materials solely for the three Individual Defendants. The City Defendants have therefore not been properly served and joined to this action, and the time to serve them has expired. See Fed. R. Civ. P. 4(m).

The Court has considered, sua sponte, whether Plaintiff has stated a claim against the City Defendants. A municipality is subject to liability under Section 1983 only if the plaintiff's injury is the result of municipal policy, custom, or practice. Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A city may not be held liable solely "by application of the doctrine of respondeat superior." Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986). As Plaintiff has made no allegations of a policy, custom, or practice by the City Defendants in his Complaint, and limits his allegations to a single episode, the Court concludes that the Complaint, read in the light most favorable to Plaintiff in the context of the entire record and construed with the leniency afforded a pro se plaintiff, does not state a claim upon which relief can be granted against the City Defendants, and Plaintiff's claims against the City Defendants are dismissed accordingly.

CONCLUSION

For the foregoing reasons, the Individual Defendants' motion for summary judgment is granted, and the Court dismisses the Complaint as against the City Defendants sua

sponte. This Memorandum Opinion and Order resolves docket entry number 34.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully requested to enter judgment in favor of Defendants, and close this case.

SO ORDERED.

Dated: New York, New York
August 12, 2016

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copy of sealed and redacted versions mailed to:
Prince Divine Messiah Muhammad, pro se
Rochester Regional Forensic Unit
1111 Elmwood A
Rochester, NY 14620